**SO ORDERED.**

**SIGNED this 9th day of August, 2024.**



_Lena Mansori James_
LENA MANSORI JAMES
UNITED STATES BANKRUPTCY JUDGE

---

# UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### DURHAM DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Andre Edson Bellido Quevedo and | ) | Case No. 23-80195 |
| Faith Boadi Bellido, | ) | |
| | ) | |
| Debtors. | ) | Chapter 7 |
| _____ | ) | |

## OPINION AND ORDER
### SUSTAINING TRUSTEE'S OBJECTION TO AMENDED EXEMPTIONS

THIS MATTER comes before the Court on the Objection to Amended Claim for Property Exemptions (Docket No. 28, the "Objection") filed by Vicki Parrott, the chapter 7 trustee (the "Trustee") for the bankruptcy estate of Andrew Quevedo and Faith Bellido (collectively, the "Debtors"). The Debtors seek to exempt the entirety of their interests in 2023 state and federal tax refunds—$10,035 from their federal return and $1,490 from the state—under a combination of N.C. Gen. Stat. § 1C-1601(a)(2) and (a)(12). (Docket No. 25). The Trustee raises two objections to the Debtors' claimed exemptions. First, she alleges that state or federal earned income tax credits (collectively, "EITC") and additional child tax credits ("ACTC"), which the Debtors claim as exempt under § 1C-1601(a)(12), are not encompassed by that

provision's exemption for "[a]limony, support, separate maintenance, and child support payments or funds[.]" Second, the Trustee objects to the Debtors' attempt to exempt, in the alternative, $4,995 of the tax refunds through Bellido's "wildcard" personal property exemption under N.C. Gen. Stat. § 1C-1601(a)(2), asserting that Bellido is unable to claim an ownership interest in the refunds where she had no taxable income or withholdings for the 2023 tax year. The Trustee argues that the Debtors are incorrectly allocating the income tax refunds between Quevedo and Bellido; she maintains that the proper method of allocation would consider each spouse's income and withholding in determining their individual property interests for purposes of the wildcard exemption.

For the reasons set forth below, the Court will sustain the Objection and disallow the Debtors' claimed exemptions under § 1C-1601(a)(12). The Court also finds that the appropriate method for allocating the Debtors' interests in the refunds is the "separate filings rule" first articulated in *Crowson v. Zubrod (In re Crowson)*, 431 B.R. 484 (B.A.P. 10th Cir. 2010). Under that approach, the Trustee's Objection must also be sustained.

JURISDICTION

The Court has jurisdiction over this contested matter under 28 U.S.C. § 1334. Under 28 U.S.C. § 157(a) and Local Civil Rule 83.11, the United States District Court for the Middle District of North Carolina has referred this proceeding to this Court. An objection to a debtor's claim of exemption is a core proceeding under 28 U.S.C. § 157(b)(2)(B) in which this Court is statutorily authorized to enter a final

judgment. The Court also has constitutional authority to enter a final order in this matter. Although the exemptions at issue in the Objection may derive from state law, a dispute over an exemption in property of the estate "stems from the bankruptcy itself" and therefore may be constitutionally decided by the bankruptcy court. *In re Edelson*, 533 B.R. 651, 653 (Bankr. N.D. Ill. 2015) (quoting *Stern v. Marshall*, 564 U.S. 462, 499 (2011)), *aff'd sub nom. Loventhal v. Edelson*, 579 B.R. 456 (N.D. Ill. 2016), *aff'd* 844 F.3d 662 (7th Cir. 2016); *see also In re Myatt*, No. 23-50239, 2023 WL 5761917, at *1 (Bankr. M.D.N.C. Sept. 6, 2023) (citing *In re Carlew*, 469 B.R. 666, 673 (Bankr. S.D. Tex. 2012)).

## BACKGROUND

The material facts are not in dispute and are taken from the Debtors' bankruptcy schedules and statements (Docket No. 1), amended claims for property exemptions (Docket No. 25), and 2023 state and federal tax returns, which the Court admitted into evidence at the hearing on the Objection (Ex. 1).

The Debtors filed a joint petition for relief under chapter 7 of the Bankruptcy Code on November 14, 2023. Their schedule I indicates that Quevedo is a radio repairman with the United States Marine Corps, earning monthly take-home pay of $2,402.98 after $568.13 is withheld from his monthly wages for tax, Medicare, and social security deductions. According to their schedules, the Debtors have two minor children and, while Bellido is listed as "employed," her only listed income is $342.97 in social security payments received on behalf of her children. The Debtors'

statement of financial affairs represents that Bellido earned no income and made no withholding payments for years 2023, 2022, and 2021.

On schedule A/B, the Debtors listed an ownership interest in 2023 state and federal tax refunds in an "unknown" amount. Based on their returns, which were filed post-petition as married individuals filing jointly, the Debtors were entitled to a 2023 federal tax refund of $10,035 and a 2023 state tax refund of $1,490. The $10,035 federal tax refund consists of (i) $4,444 in earned income tax credit, (ii) $3,200 in child tax credit, and (iii) $2,391 in funds that Quevedo had withheld from his pay. Under the Debtors' state return,[1] Quevedo's withholdings in the amount of $1,490 plus the Debtors' earned income tax credit of $816 were applied to the $816 tax owed, resulting in a refund of $1,490. As stated in both the federal and state returns, Bellido had no income, withholdings, or estimated tax payments.

The Debtors assert claims for exemptions in the entirety of the refunds under a combination of N.C. Gen. Stat. § 1C-1601(a)(12), which allows North Carolina debtors to exempt "[a]limony, support, separate maintenance, and child support payments or funds that have been received or to which the debtor is entitled, to the extent the payments or funds are reasonably necessary for the support of the debtor or any dependent of the debtor," and the "wildcard exemption" of N.C. Gen. Stat. § 1C-1601(a)(2), which allows debtors to retain their "aggregate interest in any

---

[1] Though they reside at Camp Lejeune and claim North Carolina exemptions, the Debtors filed 2023 state income tax returns in Virginia. Quevedo had Virginia state taxes withheld from his military pay, and the Debtors' schedules indicate that Virginia remains Quevedo's military home of record. (Docket No. 1).

property, not to exceed five thousand dollars ($5,000) in value of any unused exemption amount to which the debtor is entitled under [the homestead exemption]."

The Trustee timely filed the Objection under Federal Rule of Bankruptcy Procedure 4003(b)(1), requesting that the Court (i) disallow the Debtors' claimed exemptions under § 1C-1601(a)(12) because the 2023 refunds do not fit within that provision's definition of "support," (ii) disallow Bellido's § 1C-1601(a)(2) wildcard exemption in the 2023 refunds because she had no taxable income or withholdings for that year, and (iii) limit Quevedo's § 1C-1601(a)(2) exemption to his remaining wildcard amount of $110.57. (Docket No. 28).

The Debtor filed a response to the Objection and supplemental brief, along with supporting caselaw (Docket No. 34), contending that the language of § 1C-1601(a)(12) broadly exempts "support" payments and the EITC and ACTC fit squarely within that expansive definition. The Debtors argue that those refundable tax credits are intended to provide relief and support for low-income families facing financial difficulties and are thus encompassed by § 1C-1601(a)(12). The Debtors also assert that, based on North Carolina's equitable distribution statute, *see* N.C. Gen. Stat. § 50-20, the 2023 joint tax refunds are "presumptive marital property" and should be equally divided between Quevedo and Bellido regardless of their respective withholdings or income. They also urge the Court to adopt the "50/50 rule" in determining each spouse's share in joint income tax refunds, which would allow both Debtors to claim their respective equal portion of the refunds under the

5

wildcard exemption. Based on that reasoning, the Debtors ask that the Court overrule the Objection and allow the claimed exemptions in full.

As the allocation of joint tax refunds and the potential exemptibility of those refunds as support payments under § 1C-1601(a)(12) are issues of first impression in this district, following a hearing on the Objection, the Court entered an order setting a schedule for interested parties to file and serve a brief or memorandum of law on the legal issues presented. The Bankruptcy Administrator filed a response supporting the Trustee's position that § 1C-1601(a)(12) is intended to exempt only domestic support payments and that adopting the Debtors' expansive reading of "support" would render much of the provision's language superfluous and "create an exemption for any money, or arguably any asset whatsoever, so long as it was necessary for the support of the household." (Docket No. 42, p. 4). The Bankruptcy Administrator also meticulously described the merits and deficiencies of each of the four methods for allocating joint tax refunds before concluding that the separate filings rule best complies with and accurately reflects North Carolina law regarding spouses' separate property interests during marriage.

## DISCUSSION

A bankruptcy estate is created upon the filing of a chapter 7 bankruptcy petition, which is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 541(a) "is broad" and "includes all kinds of property, tangible and intangible, causes of action, and all other forms of property," 5 COLLIER ON BANKRUPTCY ¶ 541.03 (16th

6

ed. 2024)), "includ[ing] contingent interests in future payments." *In re Law*, 336 B.R. 780, 782 (B.A.P. 8th Cir. 2006); *see also In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993); *In re Neuton*, 922 F.2d 1379, 1382-83 (9th Cir. 1990).

The Bankruptcy Code determines what constitutes property of the estate, *see* 11 U.S.C. § 541, while state law determines what particular interest a debtor has in property. *See Barnhill v. Johnson*, 503 U.S. 393, 398 (1992); *Butner v. United States*, 440 U.S. 48, 54-55 (1979); *Wolff v. United States, IRS (In re FirstPay, Inc.)*, 773 F.3d 583, 590 (4th Cir. 2014). Given their status as contingent interests, tax refunds arising from pre-petition[2] earnings or losses have long been considered property of the estate under § 541. *Kokoszka v. Belford*, 417 U.S. 642, 648 (1974); *Segal v. Rochelle*, 382 U.S. 375, 380 (1966); *Turshen v. Chapman*, 823 F.2d 836, 838-39 (4th Cir. 1987). For the same reasons, courts have found that earned income and child tax credits, which often comprise a large portion of individual income tax refunds, may be included in the bankruptcy estate. *See, e.g.*, *Johnston v. Hazlett (In re Johnston)*, 209 F.3d 611, 613 (6th Cir. 2000); *Wood v. Jones (In re Montgomery)*, 224 F.3d. 1193, 1195 (10th Cir. 2000); *In re Law*, 336 B.R. at 783; *In re Dupree*, 619 B.R. 516, 518 (Bankr. M.D. Fla. 2020); *In re Griffin*, 339 B.R. 900, 902 (Bankr. E.D. Ky. 2006); *In re Minton*, 348 B.R. 467, 475 (Bankr. S.D. Ohio 2006); *In re Whitmer*, 228 B.R. 841, 843 (Bankr. W.D. Va. 1998).[3]

---

[2] As the Trustee concedes, the Debtors filed their petition on November 14, 2023, meaning a portion of the 2023 tax refunds may not be attributable to pre-petition earnings. (Docket No. 28, n.2).

[3] Such refunds and credits are included within the estate even if the debtor files the tax return, or receives the funds, post-petition. *See, e.g.*, *Turshen*, 823 F.2d at 838 ("The income-tax refunds clearly

7

Under 11 U.S.C. § 302(a), joint cases such as the Debtors' may be commenced by the filing of a single petition by an individual and spouse, but a separate estate is created for each debtor. *See Bunker v. Peyton (In re Bunker)*, 312 F.3d 145, 150 (4th Cir. 2002) ("[W]hen spouses file a joint Chapter 7 petition, separate bankruptcy estates are created."). The Debtors may prevent the Trustee's distribution of some of those property interests by claiming them as exempt, which effectively "withdraw[s] from the estate certain interests in property, such as [a] car or home, up to certain values." *Schwab v. Reilly*, 560 U.S. 770, 791 (2010) (quoting *Rousey v. Jacoway*, 544 U.S. 320, 325 (2005)) (emphasis removed). For jointly administered cases such as this one, "Section 522(m) permits *each debtor* in a joint case to exempt property from his estate." *Cheeseman v. Nachman*, 656 F.2d 60, 62 (4th Cir. 1981) (emphasis added).

Under § 522(b) of the Bankruptcy Code, debtors may choose between the exemptions provided by federal law and those provided by state law unless a state chooses to opt out of the federal exemption scheme. 11 U.S.C. § 522(b)(1). "North Carolina is an 'opt-out' state, and all exemptions must be claimed in accordance with North Carolina law, so the court looks to North Carolina law when determining [the Debtors'] available exemptions." *In re Parker*, 610 B.R. 535, 537

---

were not post-petition income."); *Montgomery*, 224 F.3d. at 1195 (finding "the fact that a debtor's interest in an [earned income credit] is not finalized until the end of the tax year is not an impediment to its inclusion in the bankruptcy estate"); *Minton*, 348 B.R. at 475 (holding a child tax credit for a year that began prior to the bankruptcy petition is a legal or equitable interest in property, even though it is not "finalized" until the filing of the tax return).

(Bankr. E.D.N.C. 2019) (citing N.C. Gen. Stat. § 1C-1601(f)); *see also In re Bunker*, 312 F.3d at 151.

Under Rule 4003(c) of the Federal Rules of Bankruptcy Procedure, as the objecting party, the Trustee bears the burden of proving the exemption is wrongfully claimed by a preponderance of the evidence. *In re McLain*, No. 19-51262, 2022 WL 880239, at *2 (Bankr. M.D.N.C. Feb. 9, 2022) (citing *In re Jolly*, 567 B.R. 480, 482 (Bankr. M.D.N.C. 2017)). Rule 4003(c) creates a burden-shifting framework, in which the objecting party must make an initial showing that an exemption is not properly claimed, after which the burden shifts to the debtor to establish that the property was properly exempted. *In re Man*, 428 B.R. 644, 653 n.3 (Bankr. M.D.N.C. 2010) (quoting *In re Carter*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999)). Even with this burden-shifting approach, however, the Trustee retains the burden of persuasion. *Id.*; *see also In re Walker-Lightfoot*, 660 B.R. 118, 123-26, 125 n.17 (Bankr. D. Md. 2024) (surveying the three approaches developed by bankruptcy courts for allocating the burden on objections to claims of exemptions under Rule 4003 and observing that the burden-shifting approach it adopts "strives to reconcile and respect the various objectives articulated by the Fourth Circuit [Court of Appeals]") (citing *In re Nguyen*, 211 F.3d 105, 110 (4th Cir. 2000) and *Johns Hopkins Hosp. v. Post*, 321 F. Appx. 259, 262-63 (4th Cir. 2009)).

The legal questions raised in the Objection center on the nature of a debtor's interest in joint tax refunds and whether—and the extent to which—North Carolina law allows a debtor to exempt that interest from the bankruptcy estate. These

inquiries are guided by elements of both federal and state law. While the Bankruptcy Code "dictates what interests are property of the estate," the "nature and extent of the property rights are determined by the underlying state substantive law." *Church Joint Venture, L.P. v. Blasingame (In re Blasingame)*, 986 F.3d 633, 638 (6th Cir. 2021) (cleaned up); *Raleigh v. Ill. Dep't of Rev.*, 530 U.S. 15, 20 (2000).

### A.  N.C. Gen. Stat. § 1601(a)(12)

The Trustee challenges whether the portion of the Debtors' 2023 state and federal tax refunds attributable to EITC and ACTC may be claimed as exempt under § 1C-1601(a)(12). N.C. Gen. Stat. § 1C-1601 provides in pertinent part:

> (a) Exempt property. -- Each individual, resident of this State, who is a debtor is entitled to retain free of the enforcement of the claims of creditors:
> …
> (12) Alimony, support, separate maintenance, and child support payments or funds that have been received or to which the debtor is entitled, to the extent the payments or funds are reasonably necessary for the support of the debtor or any dependent of the debtor.

N.C. Gen. Stat. § 1C-1601(a)(12) (2024).

The Debtors do not contend that that the EITC and ACTC are "alimony," "separate maintenance" or "child support" payments under § 1C-1601(a)(12); rather, they maintain that the unambiguous, plain meaning of the standalone word "support" is broad and encompasses government benefits and tax credits that provide income support to working families. The Trustee and the Bankruptcy Administrator acknowledge a broad definition for support but urge the Court to reject the Debtors' expansive reading of the statute, asserting it "would yield absurd

results as almost any funds held by the debtor or owed to the debtor as of the petition date could arguably be exempt under the statute." (Docket No. 28, ¶ 17; Docket No. 42, p. 4).

Here, a plain-meaning approach to the text of § 1C-1601(a)(12) does not yield a clear answer. "Where a statute defines a word, courts must apply that definition, but if a word is not defined by the statute, we must begin with the plain language of the statute." *Green v. Carter*, 900 S.E.2d 108, 116 (N.C. Ct. App. 2024) (cleaned up). Section 1601 contains only two statutory definitions, Internal Revenue Code and Value, that have no bearing on the reading of subdivision (12). In considering the ordinary meaning of the word "support," the Court concurs with the parties that the word had an extremely broad definition under dictionaries in use at the time the General Assembly enacted § 1C-1601(a)(12).[4] Given the lack of statutory definitions and the term's range of ordinary meanings, the Court finds "support" to be ambiguous and open to more than one interpretation.

There is little caselaw interpreting § 1C-1601(a)(12), and the Court is unable to identify any decisions directly addressing the meaning of support within that provision. Therefore, the Court is presented a question of statutory interpretation, and, "[a]ccording to well-established North Carolina law, the intent of the Legislature controls the interpretation of a statute." *C Invs. 2, LLC v. Auger*, 881

---

[4] *See, e.g.*, *Support*, THE NEW OXFORD AMERICAN DICTIONARY (2d ed. 2005) (defining "support" as "give assistance to, esp. financially" and "provide with a home and the necessities of life"); *Support*, BLACK'S LAW DICTIONARY (8th ed. 2004) (defining "support" as "sustenance or maintenance" and "[o]ne or more monetary payments to a current or former family member for the purpose of helping the recipient maintain an acceptable standard of living"); *Support*, WEBSTER'S NEW WORLD COLLECTION DICTIONARY (4th ed. 2004) (defining "support" as "to maintain or provide for (a person, institution, etc.) with money or subsistence").

11

S.E.2d 270, 276 (N.C. 2022) (quoting *State v. Fletcher*, 807 S.E.2d 528 (N.C. 2017)).

The Supreme Court of North Carolina provides a roadmap for interpreting the

meaning of a statute:

> When the language of a statute is clear and without ambiguity, it is
> the duty of this Court to give effect to the plain meaning of the statute,
> and a judicial construction of legislative intent is not required.
> However, when the language of a statute is ambiguous, this Court will
> determine the purpose of the statute and the intent of the legislature
> in its enactment.

*Diaz v. Div. of Soc. Servs.*, 628 S.E.2d 1, 3 (N.C. 2006) (citations omitted).

Legislative intent "must be found from the language of the act, its legislative

history and the circumstances surrounding its adoption which throw light upon the

evil sought to be remedied." *Auger*, 881 S.E.2d at 277 (quoting *State ex rel. N.C.

Milk Comm'n v. Nat'l Food Stores, Inc.*, 154 S.E.2d 548, 555 (N.C. 1967)). Along

with any available legislative history, the intent of the North Carolina General

Assembly "can be gathered from the full context of the statute and other statutes

related to the subject." *Heaton v. City of Charlotte*, 178 S.E.2d 352, 361 (N.C. 1971).

In addition, courts "utilize canons of statutory construction to aid in discerning the

legislature's intent." *Wynn v. Frederick*, 895 S.E.2d 371, 377 (2023), *reh'g denied*,

896 S.E.2d 254 (N.C. 2024).

   An added layer to any statutory interpretation of § 1C-1601(a) is the liberal

presumption North Carolina courts have adopted in favor of claimed exemptions. A

claimed exemption is presumptively valid, *In re Man*, 428 B.R. at 653, and North

Carolina "exemption laws are to be liberally construed in favor of the debtor and

allowance of the exemption." *In re Wright*, 618 B.R. 743, 746 (Bankr. M.D.N.C.

2020) (quoting *In re Parker*, 610 B.R. at 537); *see also Elmwood v. Elmwood*, 244 S.E.2d 668, 678-79 (N.C. 1978). As with statutory interpretation generally, when the language of a provision within § 1C-1601(a) "is clear and without ambiguity, 'there is no room for judicial construction,' and the statute must be given effect in accordance with its plain and definite meaning." *AVCO Fin. Servs. v. Isbell*, 312 S.E.2d 707, 708 (N.C. Ct. App. 1984) (quoting *Williams v. Williams*, 261 S.E. 2d 849, 854 (N.C. 1980)). In the case of ambiguity, "[i]f it is possible to construe an exemption statute in ways that are both favorable and unfavorable to a debtor, then the favorable method should be chosen." *In re Man*, 428 B.R. at 653 (citing *Elmood*, 244 S.E.2d at 678)). Nevertheless, when a literal interpretation of a statute such as § 1C-1601(a) "yields absurd results … or contravenes clearly expressed legislative intent, 'the reason and purpose of the law shall control and the strict letter thereof shall be disregarded.'" *AVCO*, 312 S.E.2d at 708 (quoting *State v. Barksdale*, 107 S.E. 505, 507 (1921)); *see also Auger*, 881 S.E.2d at 276.

When considering § 1C-1601(a)(12), the Court finds two commonly used canons of construction instructive. The first, *noscitur a sociis*, "instructs that 'associated words explain and limit each other' and an ambiguous or vague term 'may be made clear and specific by considering the company in which it is found, and the meaning of the terms which are associated with it.'" *Jeffries v. Cnty. of Harnett*, 817 S.E.2d 36, 50 (N.C. Ct. App. 2018) (quoting *City of Winston v. Beeson*, 47 S.E. 457, 460 (N.C. 1904)); *see also Gardner v. City of Reidsville*, 153 S.E.2d 139, 148 (N.C. 1967); *Schooldev E., LLC v. Town of Wake Forest*, 876 S.E.2d 607, 617

(N.C. Ct. App. 2022). Applying the rule of *noscitur a sociis* to § 1C-1601(a)(12), the word "support" comes between "alimony," on the one hand, and "separate maintenance" and "child support," on the other. The positioning of the word support within a list of issues attendant to divorce, separations, or a parent's legal obligations leads this Court to conclude that the support payments referenced are similarly connected to family-related legal duties or obligations and domestic agreements. This reading would exclude EIC and ACTC which have no such similar connection.

Second, it is a principle of statutory construction that "a statute should not be interpreted in a manner which would render any of its words superfluous." *State v. Coffey*, 444 S.E.2d 431, 434 (1994). As the North Carolina Supreme Court described

> This Court has repeatedly held that "a statute must be considered as a whole and construed, if possible, so that none of its provisions shall be rendered useless or redundant. It is presumed that the legislature intended each portion to be given full effect and did not intend any provision to be mere surplusage."

*State v. Morgan*, 831 S.E.2d 254, 258 (N.C. 2019) (quoting *Porsh Builders, Inc. v. City of Winston-Salem*, 276 S.E.2d 443, 447 (N.C. 1981)). The Debtors argue that there is no basis for limiting "support" only to domestic obligations, and § 1C-1601(a)(12) should instead be read to include any funds—including government benefits and tax credits such as the EIC and ACTC—that are "reasonably necessary for the support of the debtor or any dependent of the debtor." Yet, such an overly expansive reading of support would render superfluous the surrounding terms— alimony, separate maintenance, and child support payments. Those specifically

14

cited payments would be unnecessary as they would already be captured under the Debtors' far-reaching definition for a support payment. As already stated, a court should not interpret a statute "in a manner which would render *any* of its words superfluous" and should instead "construe *each word* of a statute to have meaning[.]" *Bryant v. Wake Forest Univ. Baptist Med. Ctr.*, 870 S.E.2d 269, 277 (N.C. Ct. App. 2022) (quoting *Coffey*, 444 S.E.2d at 434) (emphasis added). The Debtors' interpretation of "support" would render multiple words and phrases within § 1C-1601(a)(12) useless and unnecessary, an outcome the General Assembly could not have intended.

A reading of § 1C-1601(a)(12) which considers support payments in the context of family-related legal duties, agreements, or obligations is further bolstered by the "legislative history and the circumstances surrounding its adoption." *Auger*, 881 S.E.2d at 277 (internal citation omitted). In 2005, the General Assembly amended § 1C-1601(a) in several respects, including by adding subdivision (12). Although the underlying bill, An Act to Amend the Cap on Property of a Judgment Debtor That is Free of The Enforcement of The Claims of Creditors, And to Exempt Certain Types of Property from Enforcement, H.B. 1176, Gen. Assemb. Sess. 2005-401 (N.C. 2005), has no drafter's comments and is lacking in formal legislative history to guide the Court's interpretation, there is a summary of the proposed amendment that became subdivision (12) within a 2004 report prepared by the Exemption Revision Committee of the Bankruptcy Section of the North Carolina Bar Association. THE BANKR. SECTION OF THE N.C. BAR ASS'N, REP. OF THE

EXEMPTION REVISION COMM.: ON REVISIONS TO N.C.'S LAWS WITH REGARD TO EXEMPTIONS 105 (2004) (the "NCBA Summary"). Although the NCBA Summary is not formal legislative history, "the commentary to a statutory provision can be helpful in discerning legislative intent." *Parsons v. Jefferson-Pilot Corp.*, 426 S.E.2d 685, 689 (N.C. 1993). Committee reports, in particular, often serve as persuasive evidence of legislative intent in assessing statutory meaning. *See Trs. of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs. Inc.*, 328 S.E.2d 274, 277-78 (N.C. 1985) (relying upon a North Carolina Professional Liability Insurance Study Commission report to show the purpose behind N.C. Gen. Stat. § 1-15(c) and the factors prompting its enactment); *Greene v. Town of Valdese*, 291 S.E.2d 630, 633 (N.C. 1982) (relying upon a Report of the Municipal Government Study Commission to determine legislative intent); *State ex rel. Hunt v. N.C. Reinsurance Facility*, 275 S.E.2d 399, 409-10 (1981) (finding a statement of the North Carolina Legislative Research Commission Report on insurance laws "especially pertinent" to the question of legislative intent).

The Exemption Revision Committee recommended the inclusion of what would become § 1C-1601(a)(12) in substantially the same form in which it was enacted and currently exists.[5] In the Committee Notes on Recommended Revisions,

---

[5] The Exemption Revision Committee recommended the following exemption language: "Alimony, support or separate maintenance or child support payments to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." NCBA Summary, at 99. As enacted, and in its current form, § 1C-1601(a)(12) reads: "Alimony, support, separate maintenance, and child support payments *or funds that have been received or to which the debtor is entitled*, to the extent the payments or funds are reasonably necessary for the support of the debtor or any dependent of the debtor." (emphasis added).

the NCBA Summary states the "proposed legislation adds a new subdivision …which provides an exemption for alimony and child support payments." NCBA Summary, at 105. The Exemption Revision Committee specifically highlighted the intended protection of alimony and child support payments with no indication that the term "support" was designed to capture government benefits or tax credits such as the EIC or ACTC. The same note also illuminates how the Committee modeled its proposed exemption, stating that, "[a]lthough many states provide this type of exemption, this proposed addition is similar to the language of an Oklahoma statute. *See* 31 Okla. Stat. § 1(19))."[6] NCBA Summary, at 105. Several years before the Exemption Revision Committee proposed its Oklahoma-inspired exemption for alimony and child support payments, Oklahoma courts had already considered and rejected an expansive reading of the word "support." *See Kirtley v. George*, No. 97-CV-40-K(J), 1997 WL 33311019, at *6 (N.D. Okla. Aug. 7, 1997). Like the Debtors, the movants in *Kirtley* argued that the EIC portion of an income tax refund was exempt as a support payment. Despite a similar state requirement to construe exemption statutes liberally, the District Court for the Northern District of Oklahoma rejected that reading, finding the context of the statute "indicates that the 'support' payments being referred to are payments that arise out of and are awarded in the context of a domestic relations action." *Id.* at *5. As the court observed, "[o]nly by wrenching the term 'support' wholly out of its statutory context

---

[6] 31 Okla. St. § 1(A)(19) provides an exemption for "[s]uch person's right to receive alimony, support, separate maintenance or child support payments to the extent reasonably necessary for the support of such person and any dependent of such person."

is it possible to include federal income tax credits within its scope." *Id.* (*quoting In re Fraire*, No. 96-1241-JTM, 1997 WL 45465, at *3 (D. Kan. Jan. 2, 1997)).

The Exemption Revision Committee focused exclusively on child support and alimony in its commentary and specifically modeled the language of what became subdivision (12) on Oklahoma's analogous statute, which *Kirtley* held did not encompass tax credits such as the EIC. In interpreting statutory language, this Court "presume[s] that the Legislature chose its words with due care[,]"*Auger*, 881 S.E.2d at 278, and "acted with full knowledge of prior and existing law." *Dickson v. Rucho*, 737 S.E.2d 362, 369 (N.C. 2013) (quoting *Ridge Cmty. Invs., Inc. v. Berry*, 239 S.E.2d 566, 570 (N.C. 1977)). Therefore, at the time it enacted § 1C-1601(a)(12), the Court presumes the North Carolina General Assembly was aware that the Oklahoma statute on which it modeled subdivision (12) did not include tax credits like the EIC. Accordingly, the Court finds that the timing and context around the enactment of § 1C-1601(a)(12), as supported by the available evidence of legislative intent, necessitate a reading of "support" that does not encompass tax credits such as EIC and ACTC.

The Court's interpretation of § 1C-1601(a)(12) is in line with decisions in other jurisdictions that have similarly rejected arguments to include tax credits within the scope of alimony, child support, and separate maintenance exemptions. *See, e.g.*, *In re Reshetov*, No. 10-14183-M, 2011 WL 4102770, at *3 (Bankr. N.D. Okla. Sept. 14, 2011) (finding § 1(A)(19) does not encompass ACTC within its scope); *Kirtley*, 1997 WL 33311019, at *6; *In re Rutter*, 204 B.R. 57, 60-61 (Bankr. D. Or.

18

1997) (finding statute analogous to § 1C-1601(a)(12) did not encompass EIC). Many states, however, have amended their statutes to specifically add EIC or ACTC to the list of exemptions. *See, e.g.*, Colo. Rev. Stat. § 13-54-102(1)(o) (exempting "the full amount of any federal or state income tax refund attributed to an earned income tax credit or any child tax credit"); Kan. Stat. § 60-2315 (exempting "right to receive" federal and Kansas EIC); Ind. Code § 34-55-10-2(c)(11) (exempting interest in a refund or credit "received or to be received" under federal and Indiana EIC provisions); La. Rev. Stat. § 13:3881(A)(6) (exempting federal EIC "except for seizure by the Department of Revenue or arrears in child support payments"). Others have carved out exemptions for EIC or ACTC as "public assistance" under their respective state exemption statutes. *See, e.g.*, *In re James*, 406 F.3d 1340, 1343-45 (11th Cir. 2005); *In re Moreno*, 629 B.R. 923, 932-34 (Bankr. W.D. Wash. 2021); *In re Corbett*, No. 13-60042, 2013 WL 1344717, at *2-3 (Bankr. W.D. Mo. Apr. 2, 2013); *In re Fish*, 224 B.R. 82, 84-85 (Bankr. S.D. Ill. 1998); *In re Tomczyk*, 295 B.R. 894, 896-97 (Bankr. D. Minn. 2003); *Flanery v. Mathison*, 289 B.R. 624, 628 (W.D. Ky. 2003); *In re Brasher*, 253 B.R. 484, 489 (M.D. Ala. 2000); *In re Davis*, 136 B.R. 203, 207 (Bankr. S.D. Iowa 1991); *In re Jones*, 107 B.R. 751, 752 (Bankr. D. Idaho 1989); Me. Rev. Stat. 14 § 4422.13.A (exempting federal, state, or local public assistance benefits, including "the federal earned income tax credit and additional child tax credit"). North Carolina has done neither; it does not have an explicit exemption for tax credits and has no public assistance exemption that could be interpreted to include such credits.

Based on the statute's language, construction, and the circumstances surrounding its adoption, the Court concludes that EIC and ACTC are not exempted from the claims of creditors as support payments under § 1C-1601(a)(12). The proper vehicle to exempt tax credits such as the EIC or ACTC is not through adopting an overly expansive reading of an alimony and child support exemption, but rather to: (1) exempt EIC or ACTC specifically, or (2) exempt "public assistance benefits" with language that would include (or be interpreted by courts to include) EIC or ACTC. North Carolina has thus far declined the opportunity to further amend § 1C-1601(a) to provide an exemption for public assistance generally, or EIC or ACTC specifically. While the Court is sympathetic to the Debtors' broader policy arguments regarding the importance of the EIC or ACTC to low-income workers and their children, such concerns must be addressed by the North Carolina General Assembly. For these reasons, the Court concludes that the Debtors' 2023 tax refunds attributable to the EIC and ACTC are not exempt under § 1C-1601(a)(12).

## B.  Allocating Joint Tax Refund for Purposes of § 1C-1601(a)(2) Wildcard Exemption

The Trustee further objects to the Debtors' attempt to exempt $4,995 of the tax refunds through Bellido's "wildcard" exemption. The Trustee argues that, because Bellido had no taxable income or withholdings for 2023, she is unable to claim an ownership interest in the refunds that would allow her to utilize the wildcard exemption. The Trustee asks the Court to disallow Bellido's exemption in the tax refund and limit Quevedo's exemption to his remaining wildcard amount of $110.57. (Docket No. 28, ¶ 11). For their part, the Debtors maintain that Bellido's

exemption is properly claimed, arguing that North Carolina equitable distribution and tax law militate in favor of treating the 2023 tax refunds as jointly owned with each spouse possessing a 50/50 share. (Docket No. 34, p. 2-3).

As provided in N.C. Gen. Stat. § 1C-1601, North Carolina's wildcard exemption allows each individual debtor in the state to exempt

> (2) The debtor's aggregate interest in any property, not to exceed five thousand ($5,000) in value of any unused exemption amount to which the debtor is entitled under [the homestead exemption].

N.C. Gen. Stat. § 1C-1601(a)(2) (2024).

North Carolina courts have construed the wildcard exemption broadly to capture any type of personal property, "whether it be motor vehicles, other personal property, 'tools of the trade,' or property not qualifying for any other exemption." *AVCO*, 312 S.E.2d at 708. A debtor's interest in tax refunds is included among the personal property that may be claimed under the wildcard exemption. *See In re Greene,* No. 09-51218, 2011 WL 165184, at *1 (Bankr. M.D.N.C. Jan. 19, 2011) (confirming basic principle that co-debtors may utilize the wild card exemption to claim state and federal tax refunds); *In re Evans*, No. 09-50450, 2009 WL 3259427, at *2 (Bankr. M.D.N.C. Oct. 8, 2009) (finding co-debtor could exempt her respective share of a tax refund); *In re Shepard*, No. 07-00473-JRL, 2008 WL 3992806, at *3 (Bankr. E.D.N.C. Aug. 25, 2008) (permitting co-debtors to retain portion of tax refunds claimed under wildcard exemption).

A debtor, however, "must have an ownership interest in property to claim it as exempt," and "[i]n a joint bankruptcy case, the exemptions available to each co-debtor may only be claimed from his or her separate estate." *In re Evans*, 2009 WL

21

3259427, at *2 (internal citation omitted). "An obvious extension of this fundamental tenet is that a co-debtor who owns a percentage of joint property can claim an exemption only in the portion owned." *Id.*; *see also In re Payne*, No. 04-52124C-7W, 2004 WL 2757907, at *3 (Bankr. M.D.N.C. Nov. 15, 2004) (finding joint chapter 7 debtors were each entitled to take advantage of a wildcard exemption); *In re Horstman*, 276 B.R. 80, 82 (Bankr. E.D.N.C. 2002) (finding joint chapter 7 debtor "cannot apply her wild card exemption to property that is not part of her estate").

Given this backdrop, to calculate the Debtors' permitted wildcard exemptions, the Court must determine each debtor's interest in the 2023 tax refunds. As mentioned above, the Bankruptcy Code determines what constitutes property of the estate, *see* 11 U.S.C. § 541, but state law determines whether a debtor has an interest in property in the first place. More specifically, "[s]tate law also applies to determine each spouse's specific property rights in a joint federal tax refund." *In re Duarte*, 492 B.R. 100, 103 (Bankr. E.D.N.Y. 2011) (internal citation omitted); *see also In re McInerney*, 609 B.R. 497, 503 (Bankr. N.D. Ill. 2019). Because filing a joint return does not have the effect of converting the income of one spouse into the income of the other, *see* Rev. Rul. 74-611, 1974-2 C.B. 399 *and McClelland v. Massinga*, 786 F.2d 1205, 1210 (4th Cir. 1985), the Court must look to North Carolina law to determine Bellido and Quevedo's individual property interests in the joint state and federal refunds.

There is no applicable North Carolina statute directly on point that defines spouses' rights to joint tax refunds in this context and no binding precedent at the

state or federal level. Courts in this district have not addressed the allocation of a joint tax refund for purposes of claiming the wildcard exemptions, other than in passing dicta. *See In re Evans*, 2009 WL 3259427, at *2 (noting, without analysis, that the co-debtor "can only claim an exemption in her fifty percent interest in [a state tax refund]"). Because it cannot be resolved by reference to a specific statute and courts in this state have not provided clear guidance, the Court must look to other relevant indicia to try to predict how the North Carolina Supreme Court would rule on the issue. *Colony Ins. Co. v. Peterson*, 582 F. Appx. 156, 160 (4th Cir. 2014).

Courts confronted with this question—and facing a similar dearth of statutory or caselaw direction—have turned to other legal subject areas for guidance, namely state domestic relations law and provisions of the Internal Revenue Code. Four approaches have emerged:[7]

1. <u>Withholding Rule</u>. The present majority approach divides the joint refund in proportion to each spouse's tax withholdings for the relevant year. *See, e.g.*, *Gordon v. United States*, 757 F.2d 1157, 1160 (11th Cir. 1985); *Carlson v. Moratzka (In re Carlson)*, 394 B.R. 491, 494 (B.A.P. 8th Cir. 2008); *Kleinfeldt v. Russell (In re Kleinfeldt)*, 287 B.R. 291, 292 (B.A.P. 10th Cir. 2002); *In re Culp*, 631 B.R. 252, 254-55 (Bankr. E.D. Mich. 2021); *In re McInerney*, 609 B.R. at 504-07; *In re Gartman*, 372 B.R. 790, 795-96 (Bankr. D.S.C. 2007).

2. <u>Income Rule</u>. A minority approach that has been largely superseded by the withholding rule, the income rule divides the refund in proportion to each spouse's income for the relevant year. *See, e.g.*, *Judson v. Levine (In re Levine)*, 50 B.R. 587, 587 (Bankr. S.D. Fla. 1985); *Lieshout v. Verill (In*

---

[7] In the interests of brevity and efficiency, the Court finds it unnecessary to repeat in full the excellent analysis of the four approaches provided by several other courts. *See, e.g.*, *In re McInerney*, 609 B.R. at 504-07; *Hundley v. Marsh*, 944 N.E.2d 127, 130-32 (Mass. 2011); *In re Duarte*, 492 B.R. at 104-06. For present purposes, it is sufficient to summarize the basic mechanics of the approaches; the Court will discuss the relative merits of each in the paragraphs below.

*re Verill,* 17 B.R. 652, 655 (Bankr. D. Md. 1982); *In re Kestner*, 9 B.R. 334, 336 (Bankr. E.D. Va. 1981).

3. <u>The 50/50 Rule</u>. Based on the view that marriage is a shared economic partnership, this approach divides the refund equally between the spouses. "The 50/50 Rule creates a rebuttable presumption that each spouse contributed equally to the household, including nonmonetary contributions, and, therefore, the refund should be divided equally between the spouses." *In re Spina*, 416 B.R. 92, 97 (Bankr. E.D.N.Y. 2009); *see also In re Marciano*, 372 B.R. 211, 214, 216 (Bankr. S.D.N.Y. 2007); *In re Barrow*, 306 B.R. 28, 30-31 (Bankr. W.D.N.Y. 2004); *Loevy v. Aldrich (In re Aldrich)*, 250 B.R. 907, 911-13 (Bankr. W.D. Tenn. 2000).

4. <u>Separate Filings Rule</u>. Derived from guidance provided by the Internal Revenue Service ("IRS"), this more recently developed approach allocates the refund based on each spouse's hypothetical individual tax liability had the spouses filed their tax returns as married filing separately. *See, e.g., In re Crowson*, 431 B.R. at 490; *Lee v. Walro (In re Lee)*, 508 B.R. 399, 408 (S.D. Ind. 2014); *In re Duarte*, 492 B.R. at 107-09; *In re Palmer*, 449 B.R. 621, 626-28 (Bankr. D. Mont. 2011); *Hundley*, 944 N.E.2d at 130-32. Courts employing this approach specifically look to provisions of the Internal Revenue Manual as well as key revenue rulings for the precise formula to allocate the tax liabilities and refunds between joint filers. *See Crowson*, 431 B.R. at 484-95 (citing Rev. Rul. 80-7, 1980-1 C.B. 296; Rev. Rul. 87-52, 1987-1 C.B. 347; I.R.M. § 21.4.6.5, Refund Offset).

Although the Court is mindful of the strengths and weaknesses of each of these approaches from a practical perspective, any determination of the Debtors' interests in the 2023 tax refunds must be grounded in North Carolina law. With that in mind, first, the Court declines the Debtors' invitation to adopt the 50/50 rule and summarily divide the tax refunds equally between Bellido and Quevedo. The Debtors argue that North Carolina's equitable distribution statute, N.C. Gen. Stat. § 50-20, supports treating the joint refunds as being owned equally by each of the Debtors. (Docket No. 34, p. 2). Regardless of any merits it may have as a policy matter, this argument reflects a misunderstanding of North Carolina's equitable

24

distribution system and the state's treatment of property ownership during the intact marriage and prior to separation. As this Court has noted, "[d]uring the intact marriage, 'title controls ownership' and 'the marital interest is, in essence, a contingent interest which springs into being only … upon the separation of the parties.'" *In re Myatt*, 2023 WL 5761917, at *3 (quoting Suzanne Reynolds, 2 REYNOLDS ON NORTH CAROLINA FAMILY LAW § 6.05 (6th ed. 2022)). Outside of rare circumstances not relevant here, "[t]he non-titled spouse has no interest in property acquired by the other spouse during the course of the marriage" and "the spouse with title to the property has the exclusive power to manage the property during the marriage and can generally convey the property without the other spouse's consent." Reynolds, *supra*, § 6.05; *see also* Ann B. Oldfather, et al., *Nature of Property Rights*, in 2 VALUATION AND DISTRIBUTION OF MARITAL PROPERTY RIGHTS, § 1.03(1) (Matthew Bender & Company, Inc. 2024) ("Despite the existence of a statute which might control property disposition upon divorce, almost all non-community property jurisdictions establish property rights *during* a marriage on the basis of title.") (emphasis original).

Against that background, the Court finds the Debtors' reliance upon North Carolina's equitable distribution statutes for allocating the 2023 tax refunds is misplaced. As a presently married couple under North Carolina law, Bellido and Quevedo retain their own respective interests in the 2023 tax refunds. Bellido's potential claims under North Carolina's equitable distribution statute would only come into being in the event of separation, and these "[c]laims for equitable

distribution of property are made in a specific, statutory context that cannot appropriately provide a basis on which to consider the application of standard bankruptcy exemptions." *In re Horstman*, 276 B.R. at 83 (holding vehicle purchased by a debtor during marriage and titled only to the debtor, yet used by the spouse, does not create a "marital interest" sufficient for the spouse to claim a wild card exemption in the vehicle); *see also In re Evans*, 2009 WL 3259427, at *2 n.1 (Bankr. M.D.N.C. Oct. 8, 2009) (finding "marital property" and N.C. Gen. Stat. § 50-20 are "used to determine asset distribution in a divorce" and have "no application in the context of bankruptcy exemptions").

As the 50/50 rule would not accurately reflect Bellido and Quevedo's ownership interests in the joint refunds, the Court must determine which of the remaining three allocation methods better adheres to state law and approximates what each would have received had they filed individually. Based on insights gleaned from related state tax law and recent administrative law decisions, which collectively reveal that the North Carolina Department of Revenue ("NCDOR") parallels—and in some cases directly incorporates—IRS methodologies for apportioning joint tax refunds between individual taxpayers, the Court finds that North Carolina would follow the allocation methods employed by the IRS.

Under both federal and North Carolina law, taxpayers who file joint returns are jointly and severally liable for the taxes owed. *See* 26 U.S.C. § 6013(d)(3); N.C. Gen. Stat. § 105-153.8(e). And both the federal government and North Carolina provide mechanisms for relief from that joint liability. Section 6015 of the Internal

26

Revenue Code provides, among other things, relief for "innocent"[8] spouses and separation of liability for certain spouses who are divorced, separated, widowed, or not living together. 26 U.S.C. § 6015(b)-(c). Critically, the IRS awards proportionate relief under § 6015(c), allocating deficiencies or refunds as if the taxpayers had filed separate returns. *See* 26 U.S.C. § 6015(d)(3)(A). North Carolina directly incorporates 26 U.S.C. § 6015 through N.C. Gen. Stat. § 105-153.8(e), which states that "if a spouse qualifies for relief of liability for federal tax pursuant to section 6015 of the Code, that spouse is not liable for the corresponding tax imposed by this Part."[9] North Carolina, therefore, explicitly integrates the same approach to relief that is described in 26 U.S.C. § 6015, including the principle that "any item giving rise to a deficiency on a joint return shall be allocated to individuals filing the return in the same manner as it would have been allocated if the individuals had filed separate returns for the taxable year." 26 U.S.C. § 6015(d)(3)(A).[10] Further support is found in recent administrative law decisions, which suggest that the

---

[8] An innocent spouse exception is available if the other spouse would be solely responsible for an erroneous item or an underpayment of tax on the joint return. IRS, Instructions for Form 8857 (Rev. June 2021).

[9] In arguing in favor of the 50/50 rule and against the withholding or income approaches, the Debtors place great weight on the fact that state and federal law makes taxpayers jointly and severally liable for joint tax returns. (Docket No. 34, p. 4); *see also In re Barrow*, 306 B.R. at 31 (noting, in adopting the 50/50 rule, that "joint ownership parallels the potential of joint liability for any unpaid tax deficiency") (citing *Bass v. Hall*, 79 B.R. 653 (W.D. Va. 1987)). This argument is unavailing. The joint and several liability the Debtors allude to is far from absolute; not only do federal and state authorities countenance the idea of allocating each spouse's individual interest in a joint refund, they have specific mechanisms to do so.

[10] Other states have likewise adopted the standards of 26 U.S.C. § 6015 for purposes of joint state income tax returns. *See* N.Y. Tax Law § 654 (making provision of 26 USC. § 6015 applicable for jointly filed state income tax returns) *and In re James*, 308 B.R. 569, 570-72 (Bankr. S.D. Ala. 2002) (applying Alabama tax code that paralleled I.R.C. provision for innocent spouse relief).

state's debt setoff program[11]—as administered by the NCDOR—incorporates IRS and U.S. Department of Treasury methods for allocating individual interests in a joint refund. *See Joshua Reich v. NC Dep't of Health and Hum. Servs., Div. of Soc. Servs., Child Support Enf't*, Docket No. 23 CSE 04346, 2024 WL 2699614 (N.C.O.A.H. Mar. 12, 2024); *Barney Kohout v. UNC Hosps.*, Docket No. 13 UNC 18549, 2014 WL 1207844 (N.C.O.A.H. Jan. 23, 2014). Neither the NCDOR nor the Treasury Department apply a non-debtor spouse's portion of the joint tax refund to the liability owed by the debtor spouse, *see* 31 C.F.R. § 285.2(e)-(f) *and Reich*, 2024 WL 2699614, and non-debtor spouses subject to refund intercept by the NCDOR are instructed to file IRS Form 8379 for "injured" spouse relief[12] if asserting they are entitled to a portion of the refund, suggesting that the NCDOR employs the same approach as the IRS for determining what portion of a married couple's joint tax refund may be retained and offset against one spouse's debts. Taken together, the direct incorporation of Internal Revenue Code sections into North Carolina tax law and the utilization of IRS methods of calculating the available offset for joint tax filers, lead this Court to believe that North Carolina's Supreme Court would similarly favor adoption of federal standards and formulas, as described and

---

[11] By statute, the U.S. Department of Treasury is authorized to seize tax refunds to offset certain outstanding debts. *See* 26 U.S.C. § 6402(d); 31 U.S.C. § 3716(c); 31 U.S.C. § 3720A. North Carolina, like many other states, has adopted its own debt setoff procedures allowing the NCDOR to intercept a taxpayer's refund and apply it to outstanding debts owed to the state or a local government. *See* N.C. Gen. Stat. § 105A-1; *see also* William M. Parle and Robert E. England, *Tax Refund Offset Policies in the American States*, 20 STATE & LOC. GOV'T REV. 32, 32 (1988) (noting that, since the 1970s, the "overwhelming majority of states" have adopted some variant of the debt setoff program).

[12] An "injured spouse" can seek to recover their share of a joint refund where the joint overpayment is applied to a past-due obligation of the other spouse. Instructions to Form 8379, Injured Spouse Allocation (Rev. Nov. 2023).

developed in the Internal Revenue Manual and revenue rulings, for allocating joint state tax refunds and determining each taxpayer's individual exemptions.

Based on the above reasoning, the Court finds that, of the remaining three approaches, the separate filings rule is both better reasoned and more consonant with North Carolina law regarding property interests. In considering the income and withholding rules, the Court is unable to look past the fundamental flaws within both approaches. Dividing the refund in accordance with income, for instance, can yield inexact results if the spouses have the same income but withhold in different amounts. *See In re Duarte*, 492 B.R. at 105 (noting that dividing a joint refund on income "may have very little to do with actual contributions to the total tax obligations between spouses"). For its part, "[t]he withholding rule offers no satisfactory method of accounting for tax credits … assum[ing] falsely that refunds are the product solely of overpayments." *Hundley*, 944 N.E.2d at 133; *see also In re Duarte*, 492 B.R. at 104 (noting criticism of the withholding rule "because it only considers one component which creates the refund, namely, the monies withheld from each spouse's salary"). As noted by the 10th Circuit B.A.P., the withholding rule functions best—and perhaps only—where a joint refund consists only of tax withholdings made by one spouse and does not involve any credits. *In re Crowson*, 431 B.R. at 490 n.19. Both rules ignore "[t]he reality of the Internal Revenue Code," which "is that the total tax is not necessarily linked to income, while the overpayment is not necessarily linked exclusively to income or withholdings. For

many taxpayers, a significant portion of the refund is attributable not to these factors, but to any of a number of credits[.]" *In re Barrow*, 306 B.R. at 30-31.

In contrast, the separate filings rule more reliably calculates what each spouse's tax liability would have been had the spouses filed separately, employing the Internal Revenue Manual as well as revenue rulings that have elucidated "methods for allocating overpayments between taxpayers who file joint returns." *In re Crowson*, 431 B.R. at 490 (citing I.R.M. 2.1.4.6.5, Refund Offset; Rev. Rul. 80-7, 1980-1 C.B. 296; Rev. Rul. 87-52, 1987-1 C.B. 347).[13] The separate filings rule also conforms to the guidance provided by North Carolina General Statutes, the NCDOR, and state administrative law decisions—which mirror or explicitly incorporate many of the same mechanisms for dividing spousal interests in a joint tax refund—and closely aligns with North Carolina state law regarding each spouse's property interests during the intact marriage. Critically, the separate filings rule takes into account the tax credits each spouse may be entitled to, such as the EIC and the ACTC,[14] factors that are all-but-ignored with the income and

---

[13] Although not binding, revenue rulings and IRS guidelines have been afforded deference by federal courts. *See, e.g.*, *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 72-73, 73 n.7 (2011) (finding that IRS guidelines, while not necessarily controlling, were "insightful and persuasive" and reinforced the Court's statutory conclusions); *United States v. Mead Corp.*, 533 U.S. 218, 234-35 (2001) (An agency manual is generally entitled only to whatever deference is due based on its persuasiveness); *Gray v. United States*, 553 F.3d 410, 413 n.1 (5th Cir. 2008) ("Although not binding precedent, courts 'generally accord significant weight to the determinations of the IRS in its revenue rulings.'") (quoting *St. David's Health Care Sys. v. United States*, 349 F.3d 232, 239 n.9 (5th Cir.2003)); *IHC Health Plans, Inc. v. Comm'r*, 325 F.3d 1188, 1194 n.11 (10th Cir. 2003) ("Although we are not bound by IRS regulations or revenue rulings, we do accord them deference.").

[14] The Court observes there is some disagreement between courts adopting the separate filings rule on the appropriate means for allocating the ACTC. In *Crowson*, the court noted that "[t]here is no revenue ruling that explains how to determine each spouse's contribution to the ACTC," but concluding that it saw "no reason why the ratio used to determine contributions to the EIC could not

withholding rules.

Based on this analysis, the Court finds the separate filings rule is the most appropriate method of allocating spouses' interests in a joint tax refund. Among the detractors, there are no allegations that the separate filings rule is inaccurate or fails to calculate a debtor's true interest in a joint refund; rather, the chief complaint is that it "can be difficult to understand and employ," *In re McInerney*, 609 B.R. at 509, and is "arduous and inefficient." *In re Walton*, No. 23-60110, 2023 WL 4759038, at *2 (Bankr. N.D. Ohio July 25, 2023). It has also been argued that a "bright-line rule" like the 50/50 rule "would certainly place less burden on the courts and trustees[.]" *In re Lee*, 508 B.R. at 405. However, "[t]he fact that [the separate filings rule] may be complicated is no reason to reject it for a 'bright line' approach which has the attraction of simplicity but fails to protect each spouse's true legal interest in and to the tax refund." *In re Duarte*, 492 B.R. at 108-09; *see also In re Crowson*, 431 B.R. at 496 (noting the complexity of the separate filings rule, but

---

be used to determine the parties' relative contributions to the ACTC." 431 B.R. at 494. In a footnote, however, the panel noted that there are alternate instructions in IRS Form 8379 directing applicants for the "injured spouse" exception to allocate the ACTC "to the spouse who was allocated the qualifying child's exemption." *Id.* at 494 n.43 (citing IRS Form 8379, at 4, Line 17). The panel acknowledged that "although the method used by the IRS to divide the ACTC is different than the method used for calculating contributions to the EIC, we believe that applying the EIC contribution ratio is less complicated and burdensome, and is fair in this case." *Id.*

Though it adopted the separate filings rule, the Massachusetts Supreme Judicial Court declined to adopt the *Crowson* method for apportioning the ACTC, citing to the instructions in Form 8379 as well as the debtor's "important role as a homemaker in the care and raising of the couple's three children" as a possible basis for finding the debtor entitled to some or all of the joint refund that was due to the child tax credit. *Hundley*, 944 N.E.2d at 134 n.13. The Court concurs with the reasoning set forth in *Hundley* and finds no reason to depart from the IRS guidance regarding the allocation of the ACTC as part of a joint tax refund. However, in cases such as this—where one spouse has no reported income—the ACTC may be easier to allocate because the credit only phases in with earned income of $2,500 under current law. MARGOT L. CRANDALL-HOLLICK, ET AL., CONG. RSCH. SERV., IN12297, *The Child Tax Credit: What Lies Ahead?* (2024).

finding that "simplicity cannot come at the expense of the debtor's non-filing spouse"). Although more challenging to apply, the separate filings rule produces the most accurate computation of a debtor's individual interest in a joint tax refund that accords with North Carolina law, and the Court will employ this formula in contested matters where the parties cannot otherwise agree on the proper apportionment.[15]

CONCLUSION

For the foregoing reasons, the Court finds that EIC and ACTC credits are beyond the scope of the type of payments or funds contemplated in N.C. Gen. Stat. § 1C-1601(a)(12). The Court further finds that the proper method for allocating the 2023 state and federal tax refunds between the two Debtors in this joint case is the separate filings rule.

Therefore, it is hereby ORDERED that the Trustee's Objection is SUSTAINED.

**END OF DOCUMENT**

---

[15] Echoing the sentiment expressed in *Duarte*, this Court is "not ruling that the Trustee, the debtor and the non-debtor spouse in each case must undertake this analysis in order to determine each parties' interest in a joint tax refund," but simply holds that "this formula shall be employed where the parties do not agree on the proper allocation." *In re Duarte*, 492 B.R. at 109. Trustees in this district routinely negotiate and compromise on issues of non-exempt equity, and joint tax refunds are no exception. The trustees and debtors must determine in each case whether the costs and uncertainties of litigation on a debtor's claimed exemption in a joint tax refund militate in favor of settlement. *See In re Crowson*, 431 B.R. at 496 (noting that the separate filings analysis will "provide valuable guidance that hopefully will assist trustees and debtors in negotiating an equitable division of a refund between the estate and a non-filing spouse.").

# PARTIES TO BE SERVED

Andre Edson Bellido Quevedo and Faith Boadi Bellido

Case #23-80195

John Paul Hughes Cournoyer, Bankruptcy Administrator

*via cm/ecf*

Vicki L. Parrott, Trustee

*via cm/ecf*

Benjamin Lovell, II on behalf of Debtors

*via cm/ecf*